UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| **SINGH MANAGEMENT CO., LLC, et al.,** | **2:21-CV-12188-TGB-EAS** |
| Plaintiffs, | HON. TERRENCE G. BERG |
| vs. | **ORDER DENYING PLAINTIFFS' MOTION FOR CONTEMPT (ECF NO. 108);** |
| **SINGH MICHIGAN HOMES LLC, et al.,** | **GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR A PERMANENT INJUNCTION (ECF NO. 108);** |
| Defendants. | **AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS (ECF NO. 109)** |

This is another chapter of the trademark dispute between Plaintiffs, four entities using the trademark "Singh" (Singh Management Co., LLC, Singh Homes, LLC, Singh Development, LLC, and Singh Construction II, LLC) ("Plaintiff[1]" or "Singh") and Defendants, four

---

[1] Although there are multiple parties on both sides of the "v.," for convenience and ease of understanding, this Order primarily uses the singular "Plaintiff" and "Defendant" to describe the respective parties.

entities and an individual also using the Singh name (Singh Michigan Homes LLC, Singh Michigan Development Co., Inc., Singh Michigan Building Co., Inc., Singh Michigan Construction LLC, and Darshan Grewal ("Defendant" or "Darshan"). The parties dispute what names Defendant may lawfully use to identify his construction businesses. In its previous Order, the Court found that Defendant, a member of the Singh family who is now unaffiliated with Plaintiff, had willfully infringed upon Plaintiff's trademarks. Now, Plaintiff moves the Court to hold Defendant in contempt for what Plaintiff claims is a violation of this Court's Preliminary Injunction in this case, to enter a permanent injunction precluding Defendant from all uses of the name "Singh," and to award Plaintiff attorneys' fees and costs.

For the reasons that follow, the Court **ORDERS** that:

Plaintiff's Motion for Contempt will be **DENIED**.

Plaintiff's Motion for a Permanent Injunction will be **GRANTED IN PART** and **DENIED IN PART**: The Court will enter a permanent injunction that will not preclude Defendant from *any and all* use of the name "Singh," but will require Defendant to include the disclaimer "Not Affiliated With Singh Homes, LLC" in prominently visible and legible print together with any and all uses of the name "Singh."

Plaintiff's Motion for Attorneys' Fees and Costs will be **GRANTED IN PART** and **DENIED IN PART**: Plaintiff will be able to recover attorneys' fees and costs for the claims on which they prevailed, but, with

2

exceptions, will not be able to recover attorneys' fees and costs for the claims on which they failed.

## I. BACKGROUND

The facts set forth in the Court's previous Order, issued September 30, 2024 are re-incorporated here, but for clarity and the reader's understanding, will be reiterated in part. ECF No. 103.

### 1. Plaintiff's "Singh" Mark

Over fifty years ago, Gurmale Singh Grewal chose the trade name "Singh" and founded Singh Associates in Michigan, the first of a large network of companies involving the Singh Grewal family — including Plaintiff in this case — providing real estate services in Michigan and other states. ECF No. 1, PageID.8. Plaintiff applied for and received from the United States Patent and Trademark Office a registration number for the SINGH Design Mark with Singh Services in 1999, and for the SINGH Word Mark with SINGH Services in 2019. *Id.* at PageID.10. Over the years, the name "Singh," as associated with the real estate services offered by Plaintiff, became "well known in [Michigan]" such that there exists "strong consumer recognition of the Singh brand." *Singh Mgmt. Co. v. Singh Bldg. Co.*, No. 15-11478, 2020 WL 6817089, at *1 (E.D. Mich. Nov. 20, 2020) (Friedman, J.).

### 2.     First Trademark Infringement Action and Permanent Injunction

Defendant Darshan Singh Grewal, a member of the Grewal family, was actively involved in the Plaintiffs' Singh businesses until 2011. ECF No. 1, PageID.14. After his termination, Darshan established businesses using the Singh Mark, which Plaintiff challenged in this Court in 2015. *Id.* at PageID.14–15. The Court entered a permanent injunction limiting Darshan's use of the word "Singh" as the "only identifying name" to describe his services but permitting him to use "Singh" as a surname "in conjunction with [his] full name." *Singh Mgmt.*, 2020 WL 6817089, at *5. Following further litigation, the Court amended its judgment to indicate that "[D]efendants are enjoined from using the name 'Singh' alone as the only identifying proper noun used to describe their business." *Id.* at *7.

### 3.     "Singh Michigan"

A few months after the entry of the Amended Judgment, Darshan re-named the infringing companies, adding the proper noun "Michigan" next to the name "Singh." ECF No. 95, PageID.1435. For instance, Darshan renamed two of the infringing companies from "Singh Building Company, Inc." and "Singh Development Company, Inc." to "Singh Michigan Building Co. Inc." and "Singh Michigan Development Co. Inc." ECF No. 44, PageID.532–33. He registered these two companies as well as Singh Michigan Homes LLC and Singh Michigan Construction LLC with the Michigan Secretary of State between March and April 2021. *Id.*

He started advertising his real estate services through, among other ways, signposts, ECF No. 95-3, PageID.1469, printed advertising, *id.*, at PageID.1470, business repositories, ECF No. 98-6, PageID.1688, PageID.1691, and the internet, *id.* at PageID.1698. Soon thereafter, Plaintiff started receiving emails from customers interested in Defendant's services and properties, ECF No. 96-3, PageID.1555; ECF No. 96-4, PageID.1558, and from real estate magazines working with Darshan on advertising his businesses. ECF No. 96-5, PageID.1563.

### 4.    Second Trademark Infringement Action

In response, Plaintiff filed the instant lawsuit, alleging that Defendant's conduct constituted trademark infringement. ECF No. 1. The Court issued a Preliminary Injunction on October 25, 2021, forbidding any use of the "Singh Marks" by Defendant. *See* ECF No. 30. On July 28, 2023, Plaintiff filed a motion for summary judgment that Defendant is liable for willful trademark infringement and acted in contempt of the Court's previous Permanent Injunction. *See* ECF No. 98.

### 5.    The Court's Most Recent Order

On September 30, 2024, the Court denied Plaintiff's Motion for Contempt, finding that ambiguity in the previous Permanent Injunction prevented a finding of clear and unambiguous evidence that Defendant's use of the "Singh Michigan" Marks violated the Court's order. ECF No. 103, PageID.1798–1805. However, the Court granted Plaintiff summary judgment on whether the use of the "Singh Michigan" Marks constituted

5

trademark infringement, and whether such use was *willful* trademark infringement. *Id.* at PageID.1805–19.

The Court found that:

> Defendants' "ostrich-like" lack of concern as to whether their use of "Singh Michigan" might cause confusion, evinces at least willful blindness and reckless indifference. Darshan's response that it would be "their problem" (meaning Plaintiffs' problem, not his) if their customers expressed confusion … suggests an intentional "head-in-the-sand" approach characteristic of willful blindness.

*Id.* at PageID.1817.

> Defendants' conduct in only slightly modifying their infringing names with a proper noun like "Michigan" qualifies as willful conduct because they must have known the addition of "Michigan" was likely to cause confusion among customers — given that Plaintiffs were also operating in Michigan — yet they still chose that proper noun in "reckless disregard" of Plaintiffs' rights. … Similarly, Defendants' decision to use business names which mirror Plaintiffs' business names cannot be said to be a coincidence but instead demonstrates a willingness to cause confusion. … Such lack of diligence or care after a prior finding of infringement undercuts any finding of mere negligence here.

*Id.* at PageID.1818–19 (citations omitted).

The Court also found that Defendant's use of the Singh Marks caused actual confusion. *Id.* at PageID.1806. Defendants claimed that these confusing names were not prohibited use "in commerce," even when

they "used the Singh Mark on print publications, signposts, and in business repositories in magazines." *Id.* at PageID.1811. The Court found this argument unconvincing and found that Defendant's authority for the proposition was not on point. *Id.* at PageID.1811–14.

### 6.    Recent Allegations of Contempt

On January 17, 2025, Plaintiff filed another motion seeking the Court to hold Defendant in contempt — this time, of the Preliminary Injunction issued in 2021. ECF No. 108.

Plaintiff alleges as follows: agents of Defendant called a mortgage lender to finance a development. *Id.* at PageID.1860. During the phone call, those agents "stated that they were calling on behalf of the 'Singh family.'" *Id.* The representative for the mortgage lender indicated that they already had a relationship with Plaintiff, after which Defendant's agents responded: "Oh, then we should not be talking," and hung up. *Id.* at PageID.1861. Plaintiff has submitted affidavits of the mortgage lender representative to this effect. *Id.* at PageID.1878–79; ECF No. 112, PageID.2039–40. The representative also avers that following this call, Defendant's agents called back to ask whether they had talked about the original call to anybody else. ECF No. 108, PageID.1861.

Defendant disputes this narrative. Defendant submits affidavits of its agents who called the mortgage lender. ECF No. 110, PageID.1970. According to Defendant's agents, Darshan Grewal did not authorize the call to the mortgage lender. *Id.* They say that neither one of them

"mentioned or alluded to the fact that they were calling on behalf of 'Darshan Singh Grewal' or 'the Singh Family.'" *Id.* at PageID.1971. Instead, Defendant's agents attest that the mortgage lender representative brought up the fact that the lender "had an owner in the 'Singh family'" in response to a question about the lender's ownership structure. *Id.* They terminated the call after this, having "recognized that [the lender] would not be a suitable business partner or lender for Darshan." *Id.*

Darshan Grewal also submitted an affidavit. He averred that "[s]ince the entry of this Court's preliminary injunction … I have not personally used the name 'Singh' in connection with any of my businesses or business activities, nor have I authorized any other person to use the name 'Singh' in connection with my business or business activities." ECF No. 110-2, PageID.1988.

Plaintiff also moved the Court to enter a Permanent Injunction that would preclude Defendant from *any* use of the term "Singh," and for an award of attorneys' fees and costs for. *See* ECF Nos. 108; 109. Defendant responded to these Motions, ECF Nos. 110; 111, and Plaintiff filed Replies. ECF Nos. 112; 113.

## II. ANALYSIS

### 1.   Plaintiff's Motion For Contempt

Plaintiff moves this Court to hold Defendant in contempt for violating this Court's October 25, 2021 Preliminary Injunction. ECF No.

108, PageID.1865–67. For the reasons that follow, Plaintiff's Motion for Contempt will be **DENIED**.

### a.    The Contempt Standard

For a district court to find a litigant in contempt, "the movant must produce clear and convincing evidence that shows that '[the nonmovant] violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order.'" *Elec. Workers Pension Tr. Fund of Loc. Union # 58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) ("*Elec. Workers*") (*quoting NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)). A litigant may also be held in contempt for failure to take all reasonable steps to comply with the Court's order, which includes demanding the appropriate results from subordinate persons. *Gnesys, Inc. v. Greene*, 437 F.3d 482, 493 (6th Cir. 2005) (*quoting Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991)).

"Clear and convincing evidence is a not a light burden and should not be confused with the less stringent, proof by a preponderance of the evidence." *Elec. Workers*, 340 F.3d at 379.

### b.    No Clear and Convincing Evidence of Contempt

Plaintiff alleges as follows: agents of Defendant called a mortgage lender to finance a development. ECF No. 108, PageID.1860. During the phone call, those agents "stated that they were calling on behalf of the 'Singh family.'" *Id.* The representative for the mortgage lender indicated

that they already had a relationship with Plaintiff, after which Defendant's agents responded: "Oh, then we should not be talking," and hung up. *Id.* at PageID.1861. Plaintiff has submitted affidavits of the mortgage lender representative to this effect. *Id.* at PageID.1878–79; ECF No. 112, PageID.2039–40. The representative also avers that following this call, Defendant's agents called back to ask whether they had talked about the original call to anybody else. ECF No. 108, PageID.1861.

Defendant disputes this narrative. Defendant submits affidavits of its agents who called the mortgage lender. ECF No. 110, PageID.1970. According to Defendant's agents, Darshan Grewal did not authorize the call to the mortgage lender. *Id.* They say that neither one of them "mentioned or alluded to the fact that they were calling on behalf of 'Darshan Singh Grewal' or 'the Singh Family.'" *Id.* at PageID.1971. Instead, Defendant's agents attest that the mortgage lender representative brought up the fact that the lender "had an owner in the 'Singh family'" in response to a question about the lender's ownership structure. *Id.* They terminated the call after this, having "recognized that [the lender] would not be a suitable business partner or lender for Darshan." *Id.*

Darshan Grewal also submitted an affidavit. He averred that "[s]ince the entry of this Court's preliminary injunction … I have not personally used the name 'Singh' in connection with any of my businesses

or business activities, nor have I authorized any other person to use the name 'Singh' in connection with my business or business activities." ECF No. 110-2, PageID.1988.

Holding Defendant in contempt would require the Court to make two findings: First, the Court would have to find that Defendant's agents actually stated that they were calling on behalf of the "Singh family." For Defendant to make such a statement would be in direct violation of the Court's Preliminary Injunction, which prohibits use of "any … term confusingly similar to the SINGH MARKS in connection with … real estate operations." ECF No. 30, PageID.371. Second, the Court would have to find that Defendant either *directed* its agents to violate the Preliminary Injunction, or that he failed to take all reasonable steps to demand that its agents comply with the Preliminary Injunction. *See Gnesys, Inc.*, 437 F.3d at 493. But the record before the Court lacks the clear and convincing evidence supporting such findings.

The record contains directly conflicting sworn affidavits — the Court cannot find by clear and convincing evidence that one side of this dispute is correct. Even if the Court were to hear testimony on this subject, the Court would be in the difficult position of having to make credibility determinations based on testimony alone, without documentary evidence. Making a credibility determination would support a finding by a preponderance of the evidence — but in the absence of some overwhelming corroborating proof supporting one side or

the other, which is lacking here — it would not be possible to conclude by clear and convincing evidence who was in the right. With no evidence beyond a contradicted affidavit for the proposition of whether Defendant's agents represented that they were calling on behalf of the Singh family, the Court does not find in this situation that there is clear and convincing evidence of that fact.

Nor does the Court have clear and convincing evidence that Defendant directed its agents to declare that they represented the Singh family, or that Defendant failed to take all reasonable steps to demand that its agents comply with the Preliminary Injunction. Darshan Grewal states that he did not direct his agents to take such action. ECF No. 110-2, PageID.1988. And he averred that he never authorized anyone else to use the name "Singh" in connection with his business. *Id.* Of course, it is possible that Grewal never *authorized* his agents to use the name "Singh," but that he still failed to take all reasonable steps to make his agents not use the name "Singh." But such speculation will not support a finding by clear and convincing evidence.

Consequently, there is insufficient evidence to support holding Defendant in contempt for the alleged statements Defendant's agents made to a potential lender. While the events described by Plaintiff may have occurred, Plaintiff has not carried its burden of proving that those events *actually* occurred by clear and convincing evidence. Plaintiff's Motion for Contempt is **DENIED**.

**2.     Plaintiff's Motion for a Permanent Injunction**

On October 25, 2021 the Court entered a preliminary injunction ordering that Defendant not use the Singh Marks, any term confusingly similar to the Singh Marks, or any representation falsely suggesting an association or connection with Plaintiff, in connection with the real estate goods and services offered by Plaintiff. Now, Plaintiff moves the court to enter a permanent injunction that would prohibit Defendant from any use of the name "Singh." ECF No. 108, PageID.1873–74. For the reasons that follow the Court will enter a permanent injunction. However, the court will not preclude defendant from using the term "Singh" in its entirety. Instead, the Court will enter a permanent injunction preserving all of the preliminary injunction's requirements but adding the requirement that, in any use by Defendant of the term "Singh," he must also clearly state that he is not affiliated with Plaintiff's business.

**a.     The Permanent Injunction Standard**

Defendant concedes that a permanent injunction is appropriate here. ECF No. 110, PageID.1972–73. "[T]here is no argument … that Plaintiffs are entitled to at least some kind of a permanent injunction." *Id.* at PageID.1972. Defendant asserts that "[t]he entire, remaining dispute between the parties concerns the scope of this permanent injunction." *Id.* at PageID.1973. Nevertheless, the Court will set out and apply the standard for granting a permanent injunction to protect Plaintiff's copyright.

13

In the copyright context, as in most others:

> A plaintiff seeking a permanent injunction must demonstrate that it has suffered irreparable injury, there is no adequate remedy at law, that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted, and that it is in the public's interest to issue the injunction.

*Audi AG v. D'Amato*, 469 F.3d 534, 550 (6th Cir. 2006) (quoting *eBay Inc., et al. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)) (internal quotations omitted).

### i.   Plaintiff Suffered Irreparable Harm

"[A] number of lower courts have held that in the context of an infringement action, a finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears." *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991) (approving such approach) (cleaned up). Thus, while generally "a party seeking an injunction must show that absent the injunctive relief, he would suffer irreparable harm, … '[a] finding of tendency to deceive satisfies the requisite of irreparable harm.'" *Id.* (*quoting Black Hills Jewelry Mfg. v. Gold Rush, Inc.*, 633 F.2d 746, 753 (8th Cir. 1980)).

Here, the Court found that "Defendants' use of the Singh Mark in their business names is likely to cause confusion and has caused *actual* confusion." ECF No. 103, PageID.1806 (emphasis in original). After Defendant changed his company names in ways that the Court

eventually found constituted willful infringement, *id.* at PageID.1818–19, "Plaintiffs started receiving emails from customers interested in Defendants' services and properties … and from real estate magazines working with [Defendant] on advertising his businesses." *Id.* at PageID.1795.

In other words, more than a "likelihood of confusion" from Defendants' infringing conduct, there was actual confusion, willfully caused. This leads the Court to find that absent a permanent injunction precluding such conduct, Plaintiff will suffer irreparable injury. *See Wynn Oil Co.*, 943 F.2d at 608. Defendant does not contest that Plaintiff will suffer irreparable harm without a permanent injunction.

### ii.   There is no Adequate Remedy at Law for Defendant's Conduct

Courts find that where there is potential for future harm arising from trademark violations, there is no adequate remedy at law. *See Audi AG*, 469 F.3d at 550; *accord ServPro Intell. Prop., Inc. v. Blanton*, 451 F. Supp. 3d 710, 730 (W.D. Ky. 2020). Here, Defendant's conduct in this case shows that there is potential for future harm. Previously, the Court found that Defendant exhibited an "'ostrich-like' lack of concern as to whether [his conduct] might cause confusion." ECF No. 103, PageID.1817. In light of such behavior, the Court finds violations of the preliminary injunction appear likely to recur. In any case, Defendant does not contest that there is an adequate remedy at law for his conduct. Accordingly, the Court finds

that absent a permanent injunction, there will be no adequate remedy at law for Defendant's conduct.

This conclusion is strengthened by consideration of the evidence provided by Plaintiff in the present Motion for Contempt — namely that agents of Defendant are violating the preliminary injunction. While the Court has found no clear and convincing evidence of contempt, there are certainly indications that Plaintiff is violating the preliminary injunction. Such indications strengthen the Court's conclusion that there is no adequate remedy at law besides a permanent injunction.

### iii. The Balance of Hardships Favors a Permanent Injunction

"In balancing the hardships between each party, [courts] note that [defendant] faces no hardship in refraining from willful trademark infringement, whereas [plaintiff] faces hardship from loss of sales." *Audi AG*, 469 F.3d at 550. This case is no exception. Defendant would face no hardship if Defendant was refrained from willfully imitating Plaintiff's Singh Marks, whereas Plaintiff faces hardship from such imitation. This favors a permanent injunction. In any case, Defendant does not contend that the balance of hardships weighs against a permanent injunction.

### iv. A Permanent Injunction Would Serve the Public Interest

It is in the public interest to issue injunctions "in order to prevent consumers from being misled." *Id.* The Court found that Defendant willfully misled the public by infringing upon Plaintiff's Singh Marks. A

16

permanent injunction is necessary to prevent further willful infringement by Defendant. And Defendant does not argue otherwise.

### v.   Conclusion

Therefore, the Court **ORDERS** that a permanent injunction will issue to protect Plaintiff's Singh Marks. The Court's analysis leads it to the conclusion that such relief is necessary to protect Plaintiff from future willful infringement by Defendant.

### b.   The Scope of the Permanent Injunction

The scope of injunctive relief is within the reasonable discretion of the Court. *Audi AG*, 469 F.3d at 550. As a preliminary matter, the Court finds that the Preliminary Injunction issued in October 2021 by Judge Friedman, *see* ECF No. 30, is largely effective in protecting Plaintiff's rights. Therefore, the Permanent Injunction this Court will issue will be modeled upon that previous order.

As stated, Defendant only disputes the proper *scope* of the permanent injunction, not its propriety. *See* ECF No. 110, PageID.1972–73. Plaintiff states that the safe-distance rule should lead the Court to issue an injunction precluding all use by Defendant of the name "Singh." ECF No. 108, PageID.1873–74. Defendant disagrees. ECF No. 110, PageID.1982. For the reasons that follow, the Court will issue a Permanent Injunction that includes the terms of the preliminary injunction and also requires any use by Defendant for business purposes

of the term "Singh" to be followed — within four words — by the phrase: "Not Affiliated With Singh Homes, LLC."

### i. The Safe Distance Rule Applies

To advance their argument that Defendant should be precluded from any use of the term "Singh," Plaintiff relies on the "safe distance rule." ECF No. 108, PageID.1873–74.

> Equity allows courts, faced with recalcitrant parties who repeatedly violate the law, to craft permanent injunctions which proscribe activities that, standing alone, would have been unassailable. This equitable principle goes by a specialized name in the context of permanent injunctions to protect intellectual property — the Safe Distance Rule. Like the general principle, the Safe Distance Rule prevents known infringers from using trademarks whose use by non-infringers would not necessarily be actionable.

*Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 544 (6th Cir. 2014) ("*Innovation Ventures*") (cleaned up).

The Sixth Circuit holds that under certain circumstances, when a party infringes on another's trademark, "the confusion lingers, creating the need for the infringer not only to secure a new non-infringing … for his product, but one so far removed from any characteristic of the plaintiff so as to put the public on notice that the two are not related." *Innovation Ventures*, 763 F.3d at 544 (citation omitted). Otherwise, "an enjoined party 'could simply make a tiny change and start a new trademark contest all over again in the context of the contempt hearing as to use of

the new format.'" *Id* (*quoting* 5 McCarthy on Trademarks and Unfair Competition § 30:21 (4th ed. 2013)). "The Safe Distance Rule is nothing more than a specialized application of the courts' traditional equitable power to craft permanent injunctions tailored to the needs of each case, and then enforce them with the sanction of contempt." *Id.* at 545.

Plaintiff argues that because Defendant is a willful infringer of their Singh Marks, the Court should preclude Defendant from *any* use of the term "Singh" using the safe distance rule. "Here, if [Defendant] were permitted to use his full name 'Darshan Singh Grewal' in his business ventures, then … confusion would very likely have the parties before this Court for a third or fourth time." ECF No. 108, PageID.1873–74.

The Court finds that the Safe Distance Rule applies here. Defendant is a "recalcitrant part[y] who repeatedly violate[s] the law." *Innovation Ventures*, 763 F.3d at 544. Defendant's willful infringement resembles the conduct the Sixth Circuit described as sufficient to justify application of the Rule: Defendant, "an enjoined party," "simply [made] a tiny change and start[ed] a new trademark contest all over again in the context of the contempt hearing as to use of the 'new' format." *Id.* (citation omitted) Having been ordered to change his company names, Defendant merely added the term "Michigan" to each of them, an action the Court found constituted willful infringement. ECF No. 103, PageID.1818–19.

Therefore, even though the term "Singh" might not infringe upon Plaintiffs' Singh Marks when used in Defendant's full name, 'Darshan

19

Singh Grewal,' Defendant's repeated willful infringement leads the Court to determine that Defendant must be required to use business names "so far removed from any characteristic of the plaintiff so as to put the public on notice that the two are not related." *Innovation Ventures*, 763 F.3d at 544 (citation omitted). The Safe Distance Rule must apply. Otherwise, Defendant's conduct indicates that the parties will litigate this issue again and again, and Defendant will continue to make misleading use of his name. Nor is it difficult to imagine how use of Defendant's own name may be misleading. For instance, if he is entitled to use his legal name, Defendant's agents may call lenders, representing that they are from "Darshan Singh Grewal's construction business." Given the widespread recognition of the Singh Marks in Michigan, such use would risk confusion.

Defendant resists the argument that the Safe Distance Rule applies, for several reasons the Court finds unpersuasive.

Defendant argues that the Safe Distance Rule "applies only in contempt proceedings." ECF No. 110, PageID.1978. "Because the Court denied Plaintiffs' prior request to hold [Defendant] in contempt … the Court can reject Plaintiffs' Safe-Distance Rule arguments without further inquiry." *Id.* at PageID.1979. The Court disagrees. It is persuaded by Plaintiff's citation, *see* ECF No. 112, PageID.2035, to a Sixth Circuit panel's rejection of Defendant's argument. "[Appellee] similarly suggests that application of the safe-distance rule is limited to contempt

20

proceedings. We disagree. … Other courts have applied the safe-distance rule following a finding of infringement to determine the proper scope of an initial injunction regarding redesigns." *Mahindra & Mahindra, Ltd. v. FCA US, LLC*, No. 21-2605, 2022 WL 4299770, at *11 (6th Cir. Sept. 19, 2022) (collecting cases) (internal citations omitted).

Defendant argues that the Safe Distance Rule is "founded on a likelihood of confusion standard," but that there is no risk of confusion from Defendant's use of his full name. ECF No. 110, PageID.1979–80 (*citing Taubman Co. v. Webfeats*, 319 F.3d 770, 779 (6th Cir. 2003)). But the case cited by Defendant proceeds to say that "once an infringer has confused the public, that confusion is not magically remedied by a name change. Instead, the confusion lingers, creating the need for the infringer not only to secure a new non-infringing name (or other infringing characteristic) for his product, but one so far removed from any characteristic of the plaintiff so as to put the public on notice that the two are not related." *Id.* The Court found that Defendant's willful infringement caused actual confusion. That confusion will linger — especially if Defendant's agents are taking steps to encourage that confusion. Using the name "Darshan Singh Grewal" is not so far removed from any characteristic of Plaintiff's Singh Marks so as to put the public on notice that the two are not related. Instead, it appears that they are literally related. There is a risk of confusion from Defendant using his full name.

21

Defendant argues that because "the [Safe Distance] Rule's purpose is to stop an infringer from preserving  good will acquired through fraud," the Rule is inapplicable, because the Court previously ruled that there is no evidence that Defendant made sales or profited from their use of the Singh Mark. *See* ECF No. 110, PageID.1980 (cleaned up) (*quoting Broderick & Bascom Rope Co. v. Manoff*, 41 F.2d 353, 354 (6th Cir. 1930)). Defendant's counsel twists the law. None of the cases they cite support the proposition that Defendant must actually make sales or profit from their willful infringement for the Safe Distance Rule to apply. Rather, courts look to whether the defendant is a recalcitrant, willful infringer, who has caused actual confusion that must be remedied by a broader injunction than would be necessary for a more innocent offender. *See Innovation Ventures*, 763 F.3d at 544. Defendant fits that bill.

Therefore, for the reasons given, the Safe Distance Rule applies to Defendant's infringement.

### ii. A "Disclaimer" for use of the Term "Singh" is Appropriate

Apart from arguing that the Safe Distance Rule is inapplicable, Defendant attempts to avoid an injunction against all uses of Singh by providing ample authority for the proposition that courts hesitate to preclude parties from the use of their own names in their business enterprises. *See* ECF No. 110, PageID.1973–77; *see e.g., LFP IP, LLC v. Hustler Cincinnati, Inc.*, 810 F.3d 424, 427 (6th Cir. 2016) ("Courts … are

'reluctan[t]' to prevent individuals from using their own surnames in business.") (alterations in original) (*quoting E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288 (9th Cir. 1992)). But this "reluctance" is just that. Courts still preclude infringers from any use of their name, including "because of defendant's bad conduct." *See* 2 McCarthy on Trademarks and Unfair Competition § 13:12 (5th ed.) (collecting cases). And because of Defendant's willful infringing conduct, the Court would be within its discretion to impose that remedy here. However, the Court determines that is not yet necessary. Moreover, the reluctance courts have shown toward precluding all use of one's legal name is reasonable.

Courts facing similar facts have chosen another remedy: requiring trademark defendants to modify their names to avoid confusion with the plaintiff. "As Judge Learned Hand stated: 'It is well settled that a newcomer may be compelled to add some distinguishing words if he chooses to use even his own surname to conduct his business.'" 2 McCarthy on Trademarks and Unfair Competition § 13:11 (5th ed.) (*quoting S. C. Johnson & Son, Inc. v. Johnson*, 116 F.2d 427, 429 (2d Cir. 1940)).

One of those modifications to a defendant's name that courts elect is the inclusion of the defendant's first name or initials. 2 McCarthy on Trademarks and Unfair Competition § 13:11 (5th ed.) (*citing LFP, IP LLC*, 810 F.3d at 427 (requiring Jimmy Flynt to use his full name in connection with his "Sexy Gifts" business so as to avoid confusion with

23

his brother Larry Flynt)). Defendant requests the Court enter a permanent injunction requiring this modification. *See* ECF No. 110, PageID.1959 ("[T]his Court should … enter a permanent injunction permitting the use of Darshan's full name in connection with his business."). However, "the inclusion of a defendant's first name may be rejected as a remedy if it is not sufficient to prevent confusion." 2 McCarthy on Trademarks and Unfair Competition § 13:11 (5th ed.).

In this case, the inclusion of Defendant's first name would not be sufficient to prevent confusion. In other words, the Court finds that requiring Defendant to use his full name in conjunction with the name "Singh" is unlikely to prevent confusion. One can easily imagine a situation where Defendant's agents call a customer, saying "I'm calling from the Darshan SINGH Grewal Construction company." In such a scenario, the caller could put great emphasis upon the term Singh. The customer may be aware that Singh Homes — Plaintiff's business — is a successful construction company, and upon hearing this introduction, may naturally assume that the caller represents Plaintiff or Plaintiff's associates. Such a conclusion is in line with that of other courts faced with the thorny problem of a newcomer that shares a last name with the mark of an established brand. *See*, *e.g.*, *Nina Ricci, S.A.R.L. v. E.T.F. Enters., Inc.*, 889 F.2d 1070, 1074 (Fed. Cir. 1989); *Hat Corp. of Am. v. D. L. Davis Corp.*, 4 F. Supp. 613, 622 (D. Conn. 1933) ("For the eye of the purchaser, long taught to identify the product by the name Dobbs alone,

24

promptly registers the identity as complete upon catching the surname without noticing and pondering the significance of initials or suffix."). Accordingly, the Court finds that requiring Plaintiff to include his first name is not sufficient to avoid likely confusion. Such a conclusion is strengthened by the application of the Safe Distance Rule, which instructs the Court that Defendant should not be permitted the benefit of any doubt.

Instead, a disclaimer is necessary to avoid any confusion. Courts order defendants to follow their name with disclaimers which indicate that they are not affiliated with the plaintiff. *See* 2 McCarthy on Trademarks and Unfair Competition § 13:11 (5th ed.); *Joseph Scott Co. v. Scott Swimming Pools, Inc.*, 764 F.2d 62, 69, (2d Cir. 1985) (affirming injunction that name "Scott" "shall appear only in direct conjunction with the following disclaimer: 'Not Connected with, Or a Successor to, Scott Swimming Pools, Inc.', which disclaimer shall be the same size and no less prominent than the name."); *Nat'l Distillers Prods. Corp. v. K. Taylor Distilling Co.*, 31 F. Supp. 611, 616 (E.D. Ky. 1940) (issuing injunction restraining defendant from using the name "'Taylor' … unless accompanied by a statement plainly and specifically showing that the defendant is neither the successor to nor connected with the maker of 'Old Taylor' whiskey" (citations omitted)); *Friend v. H. A. Friend & Co.*, 416 F.2d 526, 534 (9th Cir. 1969) (affirming injunction precluding use of

name 'Friend' unless "accompanied by the parenthetical 'Not affiliated with H. A. Friend and Company of Zion, Illinois.'").

Therefore, to prevent confusion with Plaintiff under the Safe Distance Rule, while still respecting the traditional reluctance to preclude all use of a party's name, the Court **ORDERS** that Defendants, any of their affiliates, employees, agents, attorneys, servants, and officers, and all those in active concert or participation with any of the Defendants or their employees, agents, attorneys, servants, and officers, who receive actual notice by personal service or otherwise of this injunction (collectively, the "Enjoined Parties"), are hereby immediately **ENJOINED AND PROHIBITED** on a nationwide basis from:

(1) any use of, or Promotion[2] with the term "Singh", the SINGH Marks (as defined in Plaintiffs' Complaint), or any other term confusingly similar to the SINGH MARKS in connection with: the real estate goods and services offered by Plaintiffs under the SINGH Marks including, but not limited to, real estate operations, real estate management, real estate sales, real estate development, residential or commercial construction and related goods and services, except in the following circumstances:
   a. use of the term "Singh" is required by law; OR
   b. the term Singh is used in the context of the full name of Darshan Singh Grewal, AND the term "Singh" is

---

[2] Promotion shall mean to advertise, market or display in any manner including but not limited to any form of print, electronic, digital, or broadcast media, as a service mark, logo, hashtag, label, website, tagline, trade name, or domain name, social media including any audio or video, billboards, banners, posters, signage, business cards, contracts and commercial documents, homes, buildings or real estate projects.

followed within four words by the phrase "Not Affiliated With Singh Homes, LLC."

    i. Example of Acceptable Use: "Darshan Singh Grewal Building Company, LLC (Not Affiliated With Singh Homes, LLC)."

    ii. Example of Unacceptable Use (more than four words between "Singh" and the disclaimer): "Darshan Singh Grewal Michigan Building Company, LLC (Not Affiliated With Singh Homes, LLC)."

    iii. Moreover, if the use of the term "Singh" under this subparagraph (b) is in print, the phrase "Not Affiliated With Singh Homes, LLC" must be the same size and no less prominent than the full name of Darshan Singh Grewal.

(2) use any designation of origin or representation which falsely suggests or represents an association or connection with Plaintiffs; and

(3) directing, encouraging or soliciting third parties to commit any of the prohibited acts herein.

Subparagraph "(a)" above is a response to Defendant's arguments that Defendant is "a professional builder required by the State of Michigan to hold and obtain a builder's license that uses and lists his full name." ECF No. 110, PageID.1976.

Therefore, Plaintiff's Motion for a Permanent Injunction will be **GRANTED IN PART**, to the extent that the Court will issue a permanent injunction, and **DENIED IN PART**, to the extent that the Permanent Injunction will not preclude Defendant from any use of the term Singh.

### 3.   Plaintiff's Motion for Attorneys' Fees and Costs

Plaintiff seeks an award of attorneys' fees and costs arising from this case. ECF No. 109, PageID.1937. Defendant opposes this request. ECF No. 111, PageID.2023. For the reasons that follow, the Court will **GRANT IN PART AND DENY IN PART** Plaintiff's Motion for Attorneys' Fees and Costs.

### a.   The Standard for Fee Awards

Under 15 U.S.C. § 1117, the Court may, "in exceptional cases," award reasonable attorneys' fees to the prevailing party. Two inquiries arise: (1) whether the requesting party was the prevailing party, and (2) whether the case was exceptional. *See Audi AG*, 469 F.3d at 550.

A party is a prevailing party for attorney's fees purposes where "they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (*quoting Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir. 1978)). Courts ask whether the plaintiff can "point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Tchrs. Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989).

Courts determine whether a case is "exceptional" by examining the totality of the circumstances to see whether there are rare qualities distinguishing the case at hand from what is typical. *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 478 (6th Cir. 2022) (*citing*

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). For instance, does the plaintiff have an unusually strong, or weak, case? *Id.* Was the trademark infringement particularly blatant? *Id.* And did the losing party litigate unreasonably? *Id.*

### b.    Plaintiff is the Prevailing Party

When the Court issued its Order finding that Defendant willfully infringed on Plaintiff's copyright, the Court noted that an award of attorneys' fees was as yet inappropriate: "Who prevails will depend on whether a permanent injunction is issued and what its scope will be. It is premature to decide prevailing status at this time." ECF No. 103, PageID.1825.

Deciding the question of prevailing party status is no longer premature. The Court has determined that a Permanent Injunction will issue that precludes Defendant from any use of the term Singh for business purposes unless followed by a disclaimer that he is not affiliated with Plaintiff. Therefore, Plaintiff has succeeded on a significant issue in litigation which achieves some of the benefit they parties sought in bringing suit: permanent injunctive relief that places severe restrictions on Defendant's use of the term "Singh." *See Hensley*, 461 U.S. at 433. Having found that Defendant is a willful copyright infringer, the Court must place restrictions on Defendant using part of his own name for business purposes. Plaintiff has prevailed.

Defendant argues that Plaintiff is not a prevailing party because "this Court has *also* granted Defendants' partial summary disposition." ECF No. 111, PageID.2008. But Defendant's "victories" in this case, such as his successful defense against Plaintiff's allegations of contempt, and his defense against Plaintiff's allegation that Defendant benefited from his use of the name "Singh," *see id.,* do not negate the fact that Plaintiffs have obtained a resolution of this dispute which changes the legal relationship between itself and Defendant. *See Texas State Tchrs. Ass'n,* 489 U.S. at 792. Before the filing of the Motions which this Court resolved in its September 30, 2024 Order, *see* ECF No. 103, Defendant was subject to a preliminary injunction, not a permanent injunction, and Defendant was arguably permitted to use his full name in business without a disclaimer of non-affiliation. Plaintiff has won significant victories which make it a prevailing party for attorneys' fees purposes.

### c.   This Case is Exceptional

Examining the totality of the circumstances, *see Max Rack, Inc.*, 40 F.4th at 478, this is an exceptional case under which Plaintiff, the prevailing party, is entitled to attorneys' fees.

One consideration weighing on whether a case qualifies as exceptional is whether the plaintiff had an "unusually strong … case on the merits." *Id.* ("Blatant trademark infringement might justify an award for the plaintiff."). Here, Plaintiff had such an unusually strong case.

Thus, the Court granted Plaintiff summary judgment on whether Defendant willfully infringed upon Plaintiff's copyright. ECF No. 103, PageID.1818–19. The Court found that "[t]he record establishes … that Defendants' use of the Singh Marks … has caused *actual* confusion." *Id.* at PageID.1806. Defendants claimed that these confusing names were not used "in commerce," even when they "used the Singh Mark on print publications, signposts, and in business repositories in magazines." *Id.* at PageID.1811. The Court found this argument unconvincing and found that Defendant's authority for the proposition was not on point. *Id.* at PageID.1811–14.

Nor was the question of whether Defendant's infringement was willful difficult to resolve. The Court found:

> Defendants' "ostrich-like" lack of concern as to whether their use of "Singh Michigan" might cause confusion, evinces at least willful blindness and reckless indifference. Darshan's response that it would be "their problem" (meaning Plaintiffs' problem, not his) if their customers expressed confusion … suggests an intentional "head-in-the-sand" approach characteristic of willful blindness.

*Id.* at PageID.1817.

> Defendants' conduct in only slightly modifying their infringing names with a proper noun like "Michigan" qualifies as willful conduct because they must have known the addition of "Michigan" was likely to cause confusion among customers — given that Plaintiffs were also operating in Michigan — yet they still chose that proper noun in "reckless disregard" of Plaintiffs' rights. …

> Similarly, Defendants' decision to use business names which mirror Plaintiffs' business names cannot be said to be a coincidence but instead demonstrates a willingness to cause confusion. … Such lack of diligence or care after a prior finding of infringement undercuts any finding of mere negligence here.

*Id.* at PageID.1818–19 (citations omitted).

Defendant's remaining arguments in opposition to summary judgment were unusually weak. For instance, "Defendants … [did] not dispute that their use of 'Singh' [was] likely to cause confusion." *Id.* at PageID.1806 (citation omitted).

In short, Defendant had no meaningful defense to the charge that he infringed upon Plaintiff's copyrights, nor to the charge that he did so willfully. This unusually strong case on the critical issues supports a finding that this case is "exceptional."

The Sixth Circuit also looks at whether the conduct at issue was "[b]latant trademark infringement." *Max Rack, Inc.*, 40 F.4th at 478. Here, such conduct was blatant. Already ordered by the Court not to use the term "Singh" as the only identifying name for his companies, Plaintiff merely added the unhelpful term "Michigan" to his company names. ECF No. 103, PageID.1794–95. Thus, Defendant's willful infringement caused actual confusion. *Id.* at PageID.1806. Accordingly, Defendant's blatant trademark infringement leads to a finding that this is an exceptional case.

As to whether either party litigated unreasonably, *see Max Rack, Inc.*, 40 F.4th at 478, the Court is not persuaded that Defendant advanced meritless arguments. However, as stated, Defendant's positions on the critical issue in this case — willful infringement — were weak. This is not a case where Defendant's reasonable litigation strategy counterbalances against the Court's finding that this is an exceptional case entitling Plaintiff to attorneys' fees.

Defendant advances two main arguments for why this is not an exceptional case. First, Defendant argues that willful infringement alone does not justify a finding that a case is exceptional. ECF No. 111, PageID.2012–13. Such argument finds some support by case law. *See U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1192 (6th Cir. 1997) ("It does not … follow that a case will always be 'exceptional' for purposes of awarding attorney fees where the relevant conduct is found to be willful, fraudulent, and deliberate."). But the fact that Defendant's infringement was willful is not the only reason why this case is exceptional: for one, it is the almost disingenuous nature of the willful infringement: adding "Michigan" to otherwise infringing names, telling Plaintiff rather dismissively that any customer confusion would be "their problem," and recidivating the infringement — Defendant willfully infringed, *again*, after a previous finding of infringement. The degree of willfulness makes the case exceptional.

Second, Defendant argues that the fact that Plaintiff failed to show that it suffered money damages means that this was not an exceptional case. ECF No. 111, PageID.2014. Indeed, courts do find that a lack of damages weighs against a finding of exceptionality. *See Max Rack*, 40 F.4th at 479 ("Max Rack suffered no damages from the references, further undermining any entitlement to fees."); *Hindu Incense v. Meadows*, 692 F.2d 1048, 1052 (6th Cir. 1982) ("[W]e find it important to note that Hindu admitted that there has been no loss of sales due to the infringement. Such a finding generally makes the case unexceptional for purposes of awarding fees under § 1117."). However, this general rule gives way when there has been a finding that the defendant willfully infringed. *See*, *e.g.*, *Innovation Ventures, LLC v. N2G Distrib., Inc.*, No. 08-10983, 2012 WL 1468470, at *3 (E.D. Mich. Apr. 27, 2012) (Borman, J.) ("The instant case, however, differs from *Hindu Incense* in that Defendants' adoption of the 6 Hour Energy trademark and trade dress was not wholly innocent, as reflected in the jury's finding that Defendants intentionally infringed."); *Ford Motor Co. v. Lloyd Design Corp.*, 184 F. Supp. 2d 665, 685 (E.D. Mich. 2002) ("Defendant's intentional commercial use of Plaintiffs' trademarks despite being denied a license distinguishes this case from *Hindu Incense,* where the defendant mistakenly believed that the plaintiff had ceased using the trademark at issue."); *Hindu Incense*, 692 F.2d at 1052 (distinguishing case law in which defendant deliberately infringed). Thus, while the lack

34

of financial damage does *weigh* against a finding of exceptionality, it does not *preclude* a finding of exceptionality. This is especially true where, as here, there is evidence of willful infringement. Nor does Defendant point to authority in which there is a bright-line rule that no damages mean no attorneys' fees.

Though Plaintiff did not show that Defendant caused actual damages, the Court nevertheless concludes that this case was "exceptional" due to the nature of Defendant's willful infringement. The fact that Defendant got caught before he was able to profit from his willful infringement does not somehow make this case unexceptional.

Similarly, Defendant also cites to *Bowles v. Farmers Nat'l Bank of Lebanon*, 147 F.2d 425, 428 (6th Cir. 1945), for the principle that "[I]f a sum of money [ ] to be recovered … is greatly disproportionate to the actual loss … it constitutes a penalty rather than damages." ECF No. 111, PageID.2015. While the text of case does include the term "attorney's fees," *Bowles*, 147 F.2d at 427, this quotation about penalties refers to a statute which imposes statutory penalties for violations of a law. It does not appear to relate to an attorney fee award. And the Supreme Court has rejected the proposition that "substantial attorney's fees cannot be awarded in cases involving primarily injunctive or other nonpecuniary relief." *City of Riverside v. Rivera*, 473 U.S. 1315, 1320 (1985).

Therefore, for the reasons provided, the Court determines that Plaintiff is the prevailing party, and that this case is exceptional. Plaintiff is entitled to reasonable attorneys' fees under 15 U.S.C. § 1117.

### d.   Determining What Fees Are Reasonable

Plaintiff is therefore **ORDERED** to submit a report for the Court's review, of the attorneys' fees Plaintiff incurred in litigating the issues of Defendant's willful infringement, the propriety and scope of the permanent injunction, and the *initial* motion to hold Defendant in contempt, *see* ECF No. 98.

However, Plaintiff may not recover attorneys' fees for any work conducted in the *present* attempt to hold Defendant in contempt, i.e., the work conducted in drafting the portion of the motion docketed at ECF No. 108 directed towards Plaintiff's attempt to hold Defendant in contempt.

The difference in the Court's treatment of the initial contempt motion and the present contempt motion results from an application of the rule articulated in *Hensley*, 461 U.S. 424: where a plaintiff prevails on one issue but not another, plaintiff may not recover attorneys' fees for work on the *unsuccessful* claim when "counsel's work on [the unsuccessful] claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Hensley*, 461 U.S. at 435 (*quoting Davis v. Cnty. of Los Angeles*, No. 73-63, 1974 WL 180, at *3 (C.D. Cal. June 5, 1974)). On the other hand, in circumstances such as when "plaintiff's claims for relief will involve a common core of facts or will be based on

related legal theories … counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Hensley*, 461 U.S. at 435; *see also Smith v. Serv. Master Corp.*, 592 F. App'x 363, 370 (6th Cir. 2014).

Accordingly, applying the guideposts articulated in *Hensley* to the *initial* contempt motion, the Court finds that Plaintiff's counsel's work related to that motion was directly related to and involved a common core of facts as the claims ultimately resulting in the Court's finding that Defendant willfully infringed the Singh Marks and the issuance of the Permanent Injunction. Therefore, Plaintiff can recover attorneys' fees incurred, provided that they are reasonable in the judgment of the court, while working on ECF No. 98.

However, Plaintiff's counsel's work in the *present* contempt motion did not lead to the critical findings in this case, nor did the circumstances involve a common core of facts. And Plaintiff did not prevail in that argument. Therefore, Plaintiff may not recover attorneys' fees incurred in connection with their claim of contempt in ECF No. 108.

### e.    Plaintiff is Also Entitled to Costs

Plaintiff seeks an award of interest and the costs they incurred in this litigation. ECF No. 109, PageID.1936. Defendant responds in two ways: first, they argue that § 1117 "only contemplates an award of interest under Subsection (b) in cases of counterfeits — something simply not present here." ECF No. 111, PageID.2022. The Court agrees: Plaintiff

is not entitled to interest. Second, Defendant argues that the Court has discretion to deny shifting costs when "the prevailing party's recovery was 'so insignificant that the judgment amounts to a victory for the defendant.'" *Id.* at PageID.2015 (*quoting White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986)). But this is not such a case. This Order, and the issuance of a Permanent Injunction in Plaintiff's favor, is not "so insignificant that the judgment amounts to a victory for the defendant." *Id.* Therefore, Plaintiff's Motion for Costs is granted. Plaintiff may submit a final accounting of costs incurred.

### III. CONCLUSION

Therefore, for the reasons stated, the Court **ORDERS** that Plaintiff's Motion for Contempt is **DENIED**, Plaintiff's Motion for a Permanent Injunction is **GRANTED IN PART** and **DENIED IN PART**, and that Plaintiff's Motion for Attorneys' Fees and Costs is **GRANTED IN PART** and **DENIED IN PART**.

The Court further **ORDERS THAT** Defendants, any of their affiliates, employees, agents, attorneys, servants, and officers, and all those in active concert or participation with any of the Defendants or their employees, agents, attorneys, servants, and officers, who receive actual notice by personal service or otherwise of this injunction (collectively, the "Enjoined Parties"), are hereby immediately **ENJOINED AND PROHIBITED** on a nationwide basis from:

(1) any use of, or Promotion[3] with the term "Singh", the SINGH Marks (as defined in Plaintiffs' Complaint), or any other term confusingly similar to the SINGH MARKS in connection with: the real estate goods and services offered by Plaintiffs under the SINGH Marks including, but not limited to, real estate operations, real estate management, real estate sales, real estate development, residential or commercial construction and related goods and services, except in the following circumstances:

    a. use of the term "Singh" is required by law; OR

    b. the term Singh is used in the context of the full name of Darshan Singh Grewal, AND the term "Singh" is followed within four words by the phrase "Not Affiliated With Singh Homes, LLC."

        i. Example of Acceptable Use: "Darshan Singh Grewal Building Company, LLC (Not Affiliated With Singh Homes, LLC)."

        ii. Example of Unacceptable Use (more than four words between "Singh" and the disclaimer): "Darshan Singh Grewal Michigan Building Company, LLC (Not Affiliated With Singh Homes, LLC)."

        iii. Moreover, if the use of the term "Singh" under this subparagraph (b) is in print, the phrase "Not Affiliated With Singh Homes, LLC" must be the same size and no less prominent than the full name of Darshan Singh Grewal.

(2) use any designation of origin or representation which falsely suggests or represents an association or connection with Plaintiffs; and

---

[3] Promotion shall mean to advertise, market or display in any manner including but not limited to any form of print, electronic, digital, or broadcast media, as a service mark, logo, hashtag, label, website, tagline, trade name, or domain name, social media including any audio or video, billboards, banners, posters, signage, business cards, contracts and commercial documents, homes, buildings or real estate projects.

(3) directing, encouraging or soliciting third parties to commit any of the prohibited acts herein.

No later than September 29, 2025, Defendants shall file with the Court a statement under oath certifying their compliance with this Order.

**SO ORDERED.**

Dated: September 22, 2025        /s/ Terrence G. Berg
                                TERRENCE G. BERG
                                U.S. District Judge